# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>WS Tablet WSTABCOM052022-61046<br>Seized as FPF # 2023250200009701 - Line Item #7 | ) ) ) ) ) ) ) Case No. **23MJ1929-AHG** |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference.

located in the _____SOUTHERN_____ District of _____CALIFORNIA_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960 and 963 | Importation of a Controlled Substance; Conspiracy to Commit the Same |

The application is based on these facts:

See Attached Affidavit of Homeland Security Investigations Special Agent Franco Polo, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*FRANCO A POLO* (Digitally signed by FRANCO A POLO, Date: 2023.05.25 17:28:02 -07'00')

*Applicant's signature*

Franco Polo, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: May 26, 2023

*Judge's signature*

City and state: San Diego, California       HON. ALLISON H. GODDARD, U.S. MAG. J.
*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1**:   iPhone 13 (Green)

Seized as FP&F: 2023250200009701, Line Item: 0006

("Target Device #1")

**A-2**:   WS Tablet WSTABCOM052022-61046

Seized as FP&F: 2023250200009701, Line Item: 0007

("Target Device #2")

(collectively "Target Devices")

The Target Devices are currently in the possession of Homeland Security Investigations-ASAC Calexico located at 2051 N. Waterman Avenue, Suite 100, El Centro, California 92243.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the tablet described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the tablet for evidence described below. The seizure and search of the tablet shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the tablet will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 26, 2023, up to and including February 27, 2023:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above; which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Special Agent Franco Polo, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

      iPhone 13 (Green)
      Seized as FP&F: 2023250200009701, Line Item: 0006
      ("Target Device #1")

      WS Tablet WSTABCOM052022-61046
      Seized as FP&F: 2023250200009701, Line Item: 0007
      ("Target Device #2")

(collectively "Target Devices") as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960 and 963 as further described in Attachment B. The search will include both a forensics download and manual search of the Target Devices. The requested warrant relates to the investigation and prosecution of Reyna LUNA ("LUNA" or "Defendant") for importing approximately 24.38 kilograms (53.75 pounds) of fentanyl and 14.62 kilograms (32.23 pounds) of methamphetamine from Mexico into the United States. The Target Devices are currently in the custody of Homeland Security Investigations-ASAC Calexico located at 2051 N. Waterman Avenue, Suite 100, El Centro, California 92243.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

# BACKGROUND

3. I am a Special Agent with the United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), within the Department of Homeland Security ("DHS"). I have been employed as an HSI Special Agent since August 2019. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered by law to conduct investigations and to make arrests for felony offenses enumerated in Title 18 of the United States Code, Section 2516. I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities. I am currently assigned to the HSI Office of the Assistant Special Agent in Charge, in Calexico, California.

4. Prior to my employment with HSI, I was a Deportation Officer with ICE, Enforcement and Removal Operations ("ERO") for over 3 years. As a Deportation Officer, I conducted legal research to support decisions on removal cases and assisted attorneys in representing the government in court actions. I participated in operations to identify, locate and arrest individuals who were in violation of the Immigration and Nationality Act (INA).

5. Prior to my employment with ERO, I was a United States Border Patrol Agent in San Diego, California for over 9 years. As such, I am familiar with the methods employed by smuggling and trafficking organizations to conduct their business, including, but not limited to, their methods of smuggling and trafficking humans, their use of telephones and their use of code words to conduct their transactions. During this time, I was directly involved as a case agent and have assisted other agents on several criminal investigations related to money laundering, kidnapping, alien smuggling and drug smuggling. These investigations led to the successful criminal prosecution of offenses at the state and federal level.

6. During my tenure with HSI, I have participated in and conducted investigations of violations of various Federal and State criminal laws, including unlawful possession with intent to distribute controlled substances, distribution of controlled substances, use of communication facilities to commit narcotics offenses, importation of

controlled substances, conspiracy to import, possess, and distribute controlled substances, all in violation of federal narcotics laws. These investigations resulted in arrests of individuals who imported, smuggled, received, and distributed controlled substances including cocaine, heroin, methamphetamine, fentanyl, and marijuana. These investigations also resulted in arrests of individuals involved in smuggling bulk U.S. currency from the United States to Mexico. Through these investigations, my experience, and training, as well as discussing the methods and practices of narcotics traffickers with numerous law enforcement officers and confidential sources, I have become familiar with the operations of drug trafficking organizations in the United States and Mexico.

7. I have participated in "buy-walk" and "buy-bust" operations. On multiple occasions, I have acted as team leader and supervisor for confidential source buy-walk operations. I have conducted telephone toll analysis, records research, physical and electronic surveillance, and have participated in wiretap investigations, including as an affiant on applications for Title III wiretaps. I have used telephone records and bills, financial records, ledgers, and other documents to identify drug trafficking organization co-conspirators. I have also participated in debriefings of many individuals who were arrested and later cooperated with law enforcement.

8. I have participated in and led investigations that have resulted in the identification of co-conspirators through the use of telephone records, financial records, photographs, and surveillance. I have participated in the debriefings of some of those individuals who later agreed to cooperate. Furthermore, I have participated in debriefings of confidential sources, who have successfully infiltrated organizations for the purpose of intelligence gathering. I have participated in numerous surveillance operations of illegal narcotic activity. I have participated in monitoring of court-authorized interceptions of wire and electronic communications (including monitoring authorized under Title III), and I have participated in related surveillance connected to such interceptions. I know that in communicating about the foregoing matters, narcotics traffickers frequently engaged in coded language; for example, drug traffickers will often refer to drugs by their physical

features (*e.g.*, to methamphetamine "clear," to methamphetamine or cocaine as "white," or to black-tar heroin as "brown" or "chocolate") or will refer to the drugs as though they were a legitimate commodity (*e.g.*, as quantities of "t-shirts" or some other superficially innocuous term). In these conversations, I am aware, context such as discussions of price, source, manner and means of delivery, and nature of distribution are often useful for understanding the true nature of the conversation. Furthermore, I know that narcotics traffickers will often maintain extensive contact between the delivery destinations and the points of origin.

9. I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones and other electronic devices such as tablets. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles and on persons that enter the United States at Ports of Entry such as the Calexico Ports of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual ("the driver" or "the pedestrian") responsible for driving the vehicle containing the concealed narcotics into the United States or crossing the narcotics concealed on their person into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the driver or the pedestrian regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the driver or the pedestrian to remotely monitor the progress of the narcotics, provide instructions to the driver or the pedestrian and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the driver or the pedestrian to provide further instructions regarding the transportation of the narcotics to a destination within the United States.

10. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In addition, I am aware that tablets may similarly contain contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones and tablets of individuals involved in the importation of narcotics may yield evidence:

    a. tending to indicate efforts to import controlled substances from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**FACTS SUPPORTING PROBABLE CAUSE**

11. On February 26, 2023, at approximately 1:13 p.m., LUNA, a United States Citizen, entered the United States via the vehicle primary lanes at the Andrade Port of Entry in Winterhaven, California.

12. LUNA was the driver and sole occupant of a 2016 Dodge Ram.

13. At primary inspection, LUNA presented a valid state identification card. LUNA told a primary inspections officer that she was bringing snacks and candy. LUNA stated she traveled to Mexico to purchase a book for nursing school, and she was on her way to Phoenix, Arizona because she starts school today on a Sunday. The officer received a computer-generated alert for the vehicle and referred it to secondary inspection.

14. Once in secondary, LUNA said she was bringing back snacks and medication. LUNA said she went to Mexico to get her braces tightened and was heading back home to Arizona. During a 7-point inspection, the secondary inspections officer noticed that the gas tank tapped extremely hard. He crawled underneath the vehicle and noticed that the gas tank bolts appeared to be tampered with but were painted to conceal the tampering.

15. A Human and Narcotics Detection dog alerted to the vehicle. Upon further inspection of the vehicle, a CBPO located seventy-six packages concealed within the gas tank. Forty-six packages with blue pills marked "M30" weighed 24.39 kilograms (53.75 pounds). A sample from these packages field-tested positive for the presence of fentanyl. Thirty packages weight 14.62 kilograms (32.23 pounds). A sample from these packages field-tested positive for the presence of methamphetamine.

16. LUNA was placed under arrest and charged with a violation of Title 21, United States Code sections 952 and 960, for Importation of a Controlled Substance. Target Device 1 was left in the dash holder of the vehicle and was seized following LUNA's arrest. Target Device 2 was with LUNA's personal property. During the post-arrest interview, LUNA was shown the Target Devices and claimed ownership of both Target Devices.

17. Based upon my experience and training, consultation with other law

enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the Target Devices. In light of the above facts and my experience and training, there is probable cause to believe that Defendants were using the Target Devices to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Devices for data beginning on January 26, 2023, up to and including February 27, 2023, the day after LUNA's arrest.

## METHODOLOGY

18. It is not possible to determine, merely by knowing the tablet's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the devices. Tablets today can be voice call and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their devices over the internet and remotely destroy all of the data contained on the devices. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many tablets do not have hard drives or hard drive equivalents and store information in volatile memory

within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some tablet models using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the devices manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19. Following the issuance of this warrant, I will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the tablet and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant. In addition, a manual search of the Target Devices will be conducted.

20. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

//
//
//
//
//
//
//
//
//
//

## CONCLUSION

21. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Devices will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-2 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

FRANCO A POLO
Digitally signed by FRANCO A POLO
Date: 2023.05.26 11:56:05 -07'00'

_____
Special Agent Franco Polo
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 26th day of May 2023.

_____
HON. ALLISON H. GODDARD
UNITED STATES MAGISTRATE JUDGE

9

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1**: iPhone 13 (Green)

Seized as FP&F: 2023250200009701, Line Item: 0006

("Target Device #1")

**A-2**: WS Tablet WSTABCOM052022-61046

Seized as FP&F: 2023250200009701, Line Item: 0007

("Target Device #2")

(collectively "Target Devices")

The Target Devices are currently in the possession of Homeland Security Investigations-ASAC Calexico located at 2051 N. Waterman Avenue, Suite 100, El Centro, California 92243.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the tablet described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the tablet for evidence described below.  The seizure and search of the tablet shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the tablet will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 26, 2023, up to and including February 27, 2023:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Devices; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above; which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.